UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ELOISE IRVINE, | Case No. 08-CV-0411 (PJS/JJG) |
| Plaintiff, | |
| v. | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| RELIANCE STANDARD LIFE INSURANCE COMPANY, | |
| Defendant. | |

Roger A. Jensen and Carol A. Baldwin, JENSEN, BELL, CONVERSE & ERICKSON, P.A., for plaintiff.

William L. Davidson, LIND, JENSEN, SULLIVAN & PETERSON, P.A., for defendant.

Plaintiff Eloise Irvine brings this action for life-insurance benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Alternatively, Irvine seeks restitution of premiums paid on her late husband's behalf.

This matter is before the Court on the motion of defendant Reliance Standard Life Insurance Company ("Reliance") for summary judgment. For the reasons stated below, the motion is granted insofar as it applies to claim for benefits, but denied without prejudice insofar as it applies to the claim for return of premiums.

I. BACKGROUND

Reliance issued a group life-insurance policy ("the Policy") to the law firm of Irvine, Briggs & Ramstad, P.A., effective June 1, 1999. Administrative Record ("AR") 77.[1] The policy covers only those who are "active, full-time employee[s]" of the firm. *See* AR 83 (defining

---

[1] The Administrative Record is attached as Exhibit A to the March 19, 2009 affidavit of William L. Davidson.

"eligible classes" as "those persons described on the Schedule of Benefits"); AR 79 (Schedule of Benefits defining "eligible classes" as "[e]ach active, full-time employee" in one of three classes (partner, investigator or attorney, and other)). "Full-time" is defined as "working for [the law firm] for a minimum of 30 hours during a person's regular scheduled work week." AR 80.

Coverage under the Policy terminates on the first day of the Policy month that coincides with or follows "the date the Insured ceases to be in a class eligible for this insurance . . . ." AR 83. Coverage under the Policy also terminates "at retirement." AR 79. "Retirement" is defined as, among other things, "the effective date of an Insured's . . . retirement benefits under the United States Social Security Act of 1935, as amended . . . ." AR 80.

Irvine's late husband, Robert Irvine, was an attorney for the Irvine, Briggs & Ramstad firm. Robert Irvine died on October 11, 2005 at the age of eighty-four. AR 31, 106. Irvine made a claim for benefits under the Policy. Reliance denied the claim on the basis that Robert Irvine was retired and was not a full-time active employee at the time of his death. AR 49, 53. Irvine appealed, and Reliance affirmed its decision, finding that not only was Robert Irvine not an eligible employee at the time of his death, but that he likely was never eligible for coverage under the Policy. AR 24. Irvine then filed this action.

## II. ANALYSIS

### A. *Standard of Review*

#### 1. Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute

over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for either party. *Ohio Cas. Ins. Co. v. Union Pac. R.R.*, 469 F.3d 1158, 1162 (8th Cir. 2006). In considering a motion for summary judgment, a court "must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party." *Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 468 (8th Cir. 2004).

## 2. ERISA

The Policy gives Reliance the discretion both to interpret the Policy and to determine eligibility for benefits. *See* AR 91. When an ERISA plan authorizes the claims administrator to determine eligibility for benefits, courts review the administrator's eligibility determinations for an abuse of discretion. *Pralutsky v. Metro. Life Ins. Co.*, 435 F.3d 833, 837 (8th Cir. 2006). Under that standard, an administrator's decision will be upheld if it was reasonable, and an administrator's decision will be deemed reasonable if the decision is supported by substantial evidence. *Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 583 (8th Cir. 2008). Substantial evidence means "more than a scintilla but less than a preponderance." *Id.* (citation and quotations omitted). Even if the court would have made a different decision as an initial matter, the administrator's decision will be upheld if a reasonable person could have reached a similar decision. *Id.*

The parties agree that Reliance's dual role as insurer and administrator creates a conflict of interest that the Court must weigh in determining whether Reliance has abused its discretion.

*See Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2346 (2008). As will be clear from the Court's discussion below, however, the record amply supports Reliance's denial of Irvine's claim, and therefore Reliance's conflict of interest has been given little weight.

### B. Waiver

As noted above, to be eligible under the Policy, an insured had to be a full-time employee working a minimum of thirty hours per week. Irvine argues that Reliance waived the thirty-hour requirement in a letter that was faxed to the law firm by a Reliance representative. *See* AR 33 (letter from Reliance stating that "[w]e will cover employees with 20+ hours a week"). But as Reliance points out (and Irvine does not dispute), Irvine has provided no evidence that Robert Irvine was working *at all* at the time of his death — or in the months or years preceding his death. It is thus irrelevant whether Robert Irvine was subject to a twenty-hour requirement or a thirty-hour requirement. He failed to meet either requirement.

### C. Incontestability

Irvine next argues that the Policy's incontestability clause bars Reliance from denying her claim. The incontestability clause states, in relevant part:

> We cannot contest this Policy after it has been in force for two (2) years from the date of issue, except for non-payment of premium.

AR 81. Irvine contends that, because the Policy had been in force for more than two years at the time of Robert Irvine's death, Reliance is barred from contesting Robert Irvine's eligibility for coverage.

The Eighth Circuit rejected a similar argument in *McDaniel v. Medical Life Insurance Co.*, 195 F.3d 999 (8th Cir. 1999). In *McDaniel*, the insurer denied the plaintiff's claim for life-insurance benefits because the insured did not meet a thirty-hour work requirement. *Id.* at 1001.

The plaintiff argued that the incontestability clause barred the insurer from contesting the insured's eligibility for coverage.  *Id.*  The Eighth Circuit disagreed, holding that, under federal common law, an incontestability clause does not bar an insurer's defense based on ineligibility.[2] *Id.* at 1002.  This was so, the Eighth Circuit explained, because the incontestability clause at issue barred the insurer from contesting coverage or denying a claim by a "covered person."  *Id.* at 1004.  Thus, the plaintiff still had the burden of proving that the insured met the definition of "covered person."  *Id.* at 1004.  Because the plaintiff had admitted that the insured had never met the thirty-hour work requirement, the plaintiff could not meet her burden.  *Id.*

Unlike *McDaniel*, the incontestability clause in this case does not expressly limit its applicability to insureds who are first proven to be eligible under the Policy.  One could therefore argue that *McDaniel* is distinguishable and that the incontestability clause should bar Reliance's attempt to deny Irvine's claim on the basis that Robert Irvine was ineligible.  But although *McDaniel* relied on the specific language of the incontestability clause, the Eighth Circuit's reasoning rested on the broader premise that an incontestability clause does not relieve a plaintiff of the burden of establishing her right to recover under the specific language of the policy.  *See McDaniel*, 195 F.3d at 1003-04.  This premise, in turn, is consistent with the principle, accepted by many (although certainly not all) courts, that an incontestability clause

---

[2]At the beginning of the opinion, the Eighth Circuit explained that federal common law controlled because the case arose under ERISA.  *McDaniel*, 195 F.3d at 1002.  The Eighth Circuit then looked to state law for "guidance."  *Id.*  At times, however, the opinion reads as though state law controls the outcome.  *See, e.g.*, *id.* ("we believe that Ohio rather than Missouri law most likely governs this action").  Given that the court began the opinion with the clear statement that federal common law controlled, the Court believes that the Eighth Circuit's reference to state law, while somewhat confusing, was intended only to inform its resolution of federal law.  The Court therefore reads *McDaniel* as controlling precedent on an issue of federal common law.

bars only an insurer's ability to contest the *validity* of the contract and does not bar the insurer's ability to enforce the *terms* of the contract, including those that define who is eligible to collect benefits. *See, e.g.*, *White v. Provident Life & Accident Ins. Co.*, 114 F.3d 26, 28-29 (4th Cir. 1997) ("An incontestability clause prevents an insurer from contesting the validity of an insurance contract. However, such a clause certainly does not prevent the insurer from invoking the plain terms of an ERISA plan."); *Turner v. Safeco Life Ins. Co.*, 17 F.3d 141, 145-46 (6th Cir. 1994) (rejecting argument that statute prohibiting insurer from attacking validity of policy after two years barred insurer from arguing that insured was never eligible under the policy because he never met the thirty-hour work requirement)[3]; *Button v. Conn. Gen. Life Ins. Co.*, 847 F.2d 584, 588 (9th Cir. 1988) ("We believe that the better-reasoned view is that the incontestability clause relates to the validity of the contract and not to the construction of policy provisions."); *Gill v. Gen. Am. Life Ins. Co.*, 434 F.2d 1057, 1058-60 (8th Cir. 1970) (applying Arkansas law and holding that an incontestability clause did not bar the insurer from denying benefits on the basis that the insured was not an eligible employee). *See generally* 1A Steven Plitt et al., *Couch on Insurance* § 8:40 (3d ed. 2005).

Irvine contends that declaring Robert Irvine ineligible is the same thing as declaring the Policy invalid. That is simply not true. The *validity* of the Policy — like the validity of any insurance policy — is determined on the basis of a set of facts that were in existence at the time the policy was issued. The two-year contestability period gives the insurer a limited time during

---

[3]Although *Turner* involved a statute that expressly referred to the "validity" of a policy, the Court does not believe that there is a distinction in meaning between a clause barring an insurer from contesting the validity of a policy and a clause barring an insurer from contesting a policy. In both cases, it is the validity of the policy that is being protected by the incontestability clause.

which it can investigate those facts and determine the policy's validity. This limitation represents a compromise between the insurer's interest in avoiding invalid policies and the insured's interest in avoiding disputes over validity after many years of relying on, and paying premiums for, the policy.

Unlike the question of validity, however, the question of the *eligibility* of an individual employee for benefits under the Policy is not immutably fixed, but may change over time. For example, an employee who was not a full-time employee on the date the Policy issued, and thus not eligible for coverage on that date, could later become eligible by commencing full-time work. That same employee could then retire, thus becoming ineligible, and could later return to full-time work, thus regaining eligibility. None of these changes in eligibility status would render the Policy itself valid or invalid, and it would make no sense to apply a two-year incontestability clause to prohibit the insurer from determining, based on the facts as they existed at the time of a loss, whether the loss was covered under the terms of the (valid) policy. Denying coverage on the basis of ineligibility, then, is not the same thing as denying the validity of the Policy. It is nothing more than applying the terms of the policy.

The Court therefore concludes that the incontestability clause does not bar Reliance from concluding that Robert Irvine was ineligible for coverage under the Policy. And because Irvine has not presented any evidence that Robert Irvine was working the required number of hours per week (whether thirty or twenty) at the time of his death, Reliance did not abuse its discretion when it found that Robert Irvine was ineligible for coverage.

*D. Estoppel*

Irvine next argues that Reliance is estopped from denying coverage because it was on notice that Robert Irvine was ineligible for coverage and nevertheless continued to accept premiums on his behalf. Irvine points to the fact that Robert Irvine was listed as "retired" on the law firm's letterhead and also argues that, because Reliance was aware of Robert Irvine's birth date, it would have known that he was eligible for Social Security benefits and thus no longer eligible for coverage under the Policy.

The Court disagrees. To begin with, the Eighth Circuit has held that "common-law estoppel principles cannot be used to obtain ERISA benefits that are not payable under the terms of the ERISA plan." *Fink v. Union Cent. Life Ins. Co.*, 94 F.3d 489, 492 (8th Cir. 1996) (holding that the insurer's earlier representation that the insured was eligible for coverage through June 1 did not estop the insurer from denying eligibility when the insured died before that date). That holding alone defeats Irvine's argument.

Even if the principles of estoppel were applicable, Irvine cannot show that Reliance should have known that Robert Irvine was ineligible for coverage. For coverage to terminate on the ground that the insured was retired, the insured had to collect Social Security benefits, not merely be eligible to collect them. The Policy defines "retirement" to mean, among other things, "the effective date of an Insured's . . . retirement benefits under the United States Social Security Act, as amended . . . ." AR 80. Although this language may be somewhat ambiguous, elsewhere the Policy states that "[t]he Amount of Basic Life and Accidental Death and Dismemberment Insurance will be reduced by 33 1/3% of the pre-age 65 amount at age 65 . . . ." AR 79. Clearly, then, a sixty-five-year-old insured — someone who is unquestionably *eligible* for Social Security

benefits — is *also* still eligible for coverage under the Policy. It cannot be, then, that coverage terminates whenever an employee becomes eligible to collect Social Security benefits. In addition, during the administrative process, Reliance interpreted the Policy to define "retirement" as the actual receipt of Social Security benefits.[4] *See* AR 24 ("In the absence of evidence to the contrary, we believe that Mr. Irvine (who was 83 years old at the time of his demise) was indeed collecting Social Security Retirement benefits."). Even if Reliance was aware of Robert Irvine's age, that would not put Reliance on notice that Robert Irvine was actually collecting Social Security benefits.[5]

In addition, the Court agrees with Reliance that the law firm's letterhead notation that Robert Irvine was "retired" was not sufficient to put Reliance on notice that Robert Irvine was no longer working the requisite number of hours per week. For one thing, Reliance was entitled to rely on the content of the law firm's communications without hunting through the letterhead to determine whether the letterhead provided clues that the firm's communications may be untrue. The law firm told Reliance that Robert Irvine was eligible for coverage when Reliance accepted premiums on his behalf, and a notation on a letterhead on an accompanying letter did not make it unreasonable for Reliance to rely on that representation. *Cf. McDaniel*, 195 F.3d at 1004 (noting

---

[4]In its briefing, Reliance similarly interpreted "retirement" to mean actual receipt of Social Security benefits. *See* Docket No. 23 at 14 ("it is inconceivable that Mr. Irvine would not have *received* Social Security retirement benefits") (emphasis added). At oral argument, however, Reliance's counsel argued that "retirement" means eligibility for Social Security benefits. It is not clear to the Court why counsel switched positions between briefing and oral argument. But in any event, for the reasons outlined above, the Court finds that "retirement" means the actual receipt of benefits, not the date the insured is first eligible for benefits.

[5]To be clear, the Court need not determine whether Reliance abused its discretion in finding that Robert Irvine was receiving Social Security benefits at the time of his death.

that requiring the insurer to assess the eligibility of each insured on an ongoing basis "is not in accordance with the realities of modern group life insurance policies, in which it is the employer who usually serves as the plan administrator and makes employee eligibility determinations"). Moreover, the notation "retired" after the name of a law-firm partner on a letterhead does not mean that the partner is not working at least thirty (or twenty) hours per week. Many retired lawyers continue to come to the office and practice law, albeit under a different compensation arrangement or with different voting rights than they enjoyed before retiring.

Because there is no evidence that Robert Irvine met the eligibility requirements of the Policy on the date of his death, and because Reliance is not barred from denying coverage either by the incontestability clause or by the principles of estoppel, the Court grants Reliance's motion for summary judgment on Irvine's claim for benefits under ERISA.

### E. Premiums

Irvine also brings a claim for return of premiums. Reliance argues that Irvine lacks standing to bring this claim because neither Irvine nor her late husband paid any premiums. But Reliance did not raise this argument until its reply brief, and thus Irvine did not get a chance to address it. The Court will therefore deny Reliance's motion with respect to this claim. *See Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd.*, 491 F. Supp. 2d 871, 878 (D. Minn. 2007) (courts do not consider arguments made for the first time in a reply brief).

### ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Defendant's motion for summary judgment [Docket No. 21] is GRANTED IN PART and DENIED IN PART.

2. Defendant's motion is GRANTED with respect to Count I of the amended complaint [Docket No. 11], and that count is DISMISSED WITH PREJUDICE AND ON THE MERITS.

2. Defendant's motion is DENIED WITHOUT PREJUDICE in all other respects.

Dated: July 24, 2009        s/Patrick J. Schiltz
                            Patrick J. Schiltz
                            United States District Judge